**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| POM WONDERFUL LLC, a Delaware limited liability company, *Plaintiff-Appellant*, | No. 14-55253 |
| v. | D.C. No. 2:13-cv-06917-MMM-CW |
| ROBERT G. HUBBARD, JR., DBA Portland Bottling Company, DBA Pur Beverages, *Defendant-Appellee*. | OPINION |

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted
October 6, 2014—Pasadena, California

Filed December 30, 2014

Before: David M. Ebel,[*] Andrew J. Kleinfeld, and Susan P. Graber, Circuit Judges.

Opinion by Judge Ebel

---

[*]    The Honorable David M. Ebel, Senior Judge for the United States Court of Appeals for the Tenth Circuit, sitting by designation.

**SUMMARY**[**]

---

### Trademark / Preliminary Injunction

The panel reversed the district court's order denying a motion for a preliminary injunction in a trademark infringement action under the Lanham Act.

The panel held that the district court abused its discretion in finding that Pom Wonderful, owner of the "POM" standard character mark, was unlikely to demonstrate a likelihood of consumer confusion and therefore was unlikely to succeed on the merits of its claim regarding defendants' use of the word "pŏm" on their pomegranate-flavored drink.

The panel remanded with instructions that the district court consider whether, in light of the panel's decision, Pom Wonderful met its burden of proving the other elements for a preliminary injunction.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Joseph Scott Klapach (argued), Klapach & Klapach, Beverly Hills, California; Daniel Beck, Roll Law Group P.C., Los Angeles, California; Douglas N. Masters, Loeb & Loeb LLP, Chicago, Illinois, for Plaintiff-Appellant.

Heather Lynn McCloskey (argued) and James J.S. Holmes, Sedgwick, LLP, Los Angeles, California, for Defendant-Appellee.

**OPINION**

EBEL, Circuit Judge:

This appeal arises from the district court's order denying Plaintiff-Appellant Pom Wonderful's motion for a preliminary injunction. Pom Wonderful—the owner of the "POM" standard character mark—brought a trademark infringement claim against Defendant-Appellee Robert G. Hubbard, Jr., d/b/a Portland Bottling Company and Pur Beverages ("Pur") to stop Pur from using the word "pŏm" on its pomegranate-flavored energy drink. The district court denied Pom Wonderful's motion, finding that Pom Wonderful is unlikely to demonstrate a likelihood of consumer confusion and therefore is unlikely to succeed on the merits of its trademark infringement claim.

Exercising our jurisdiction under 28 U.S.C. § 1292(a)(1), we hold that the district court abused its discretion in finding that Pom Wonderful is unlikely to succeed on the merits of its claim and, accordingly, we reverse. Because the district court's decision to deny Pom Wonderful's motion for a

preliminary injunction was tainted by its mistaken likelihood-of-success determination, we remand with instructions that the district court consider whether, in light of our decision today, Pom Wonderful meets its burden of proving the other elements for a preliminary injunction: that it is likely to suffer irreparable harm in the absence of preliminary relief; that the balance of equities tips in its favor; and that a preliminary injunction is in the public interest.

## I. Background[1]

Pom Wonderful owns numerous trademark registrations that together comprise the "POM" brand family of trademarks. These trademarks are used in connection with various goods, including pomegranate juice beverages. In addition to producing its own "POM" brand goods, Pom Wonderful also sells its pomegranate ingredients to other companies in the food and beverage industry. On occasion, Pom Wonderful licenses the use of its "POM" brand trademarks to these other companies.

Before 2002, when Pom Wonderful first began using the "POM" brand trademarks in connection with beverages, no one in the industry was known to have used the term "pom" in any way. Since 2002, Pom Wonderful has sold more than 190 million bottles of pomegranate juice, making it the leading seller of 100% pomegranate juice in supermarkets throughout the United States. Pom Wonderful's annual supermarket sales exceed $60 million.

---

[1] This appeal comes before us on the preliminary injunction record, and we therefore accept all of the parties' undisputed allegations and all of the district court's undisputed findings of fact as true for the purposes of our analysis.

Pom Wonderful has devoted a great deal of time—and spent millions of dollars—marketing and selling its "POM" brand products. In 2011 and 2012 alone, Pom Wonderful spent $24 million promoting its pomegranate juice beverages. To protect its investment, and the rights of companies that license its "POM" brand trademarks, Pom Wonderful actively polices third-party uses that may infringe on its trademark rights.

Through these policing efforts, Pom Wonderful discovered that Pur was selling a pomegranate-flavored energy drink labeled "pŏm" and informed Pur of Pom Wonderful's ownership interest in the "POM" brand trademarks. When Pur refused to change its packaging, Pom Wonderful filed suit, alleging that Pur's use of the word "pŏm" violated Pom Wonderful's trademark rights under the Lanham Act.[2] *See* 15 U.S.C. §§ 1114, 1125(a). Shortly after filing its first amended complaint, Pom Wonderful moved for a preliminary injunction to enjoin Pur from selling or marketing its "pŏm" beverage.

The district court denied the motion. Specifically, after considering the eight *Sleekcraft* factors,[3] the district court found that Pom Wonderful is unlikely to demonstrate a

---

[2]  Pom Wonderful also alleged that Pur violated California's unfair competition and unfair business practices statute, as well as California's common law. We do not consider these claims because Pom Wonderful moved for a preliminary injunction premised only on its federal trademark infringement claim.

[3]  These factors, first articulated in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated on other grounds by Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003), guide a district court's likelihood-of-confusion determination.

likelihood of consumer confusion as to the source of Pur's "pŏm" beverage. Absent a likelihood of confusion, the district court concluded that Pom Wonderful is unlikely both to succeed on the merits of its trademark claim and to meet its burden of proving the other *Winter*[4] factors for issuance of a preliminary injunction: that a preliminary injunction is necessary to prevent irreparable harm to Pom Wonderful; that a balancing of the equities favors a preliminary injunction; and that a preliminary injunction is necessary to protect the public interest. The district court accordingly denied the motion for a preliminary injunction, and Pom Wonderful filed a timely notice of appeal.

## II. Standard of Review

We review for abuse of discretion the district court's order denying Pom Wonderful's motion for a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). This case implicates two of the ways in which a district court might abuse its discretion. *See id.* First, a district court abuses its discretion if the court rests its decision on an erroneous legal standard. *Id.* To determine whether a district court abused its discretion in this way, we review legal conclusions de novo. *Id.* Second, a district court abuses its discretion if the court rests its decision on a clearly erroneous finding of fact. *Id.* To determine whether a district court abused its discretion in this way, we review factual findings for clear error. *Id.* Clear error results "from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the

---

[4] *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (outlining a four-part test that a party seeking a preliminary injunction must satisfy).

record." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012) (internal quotation marks omitted). In other words, we defer to a district court's factual findings unless, "based on the entire evidence," we are left with "a definite and firm conviction that a mistake has been committed." *Lahoti v. Vericheck, Inc.*, 586 F.3d 1190, 1196 (9th Cir. 2009) (internal quotation marks omitted).

Because de novo review is more stringent than clear error review, it is important to determine which standard applies before considering whether the district court abused its discretion in this case. Pom Wonderful argues that de novo review applies because the district court's decision to deny injunctive relief was grounded in a number of asserted legal errors that the district court committed in applying the *Sleekcraft* factors. We disagree. Although legal standards certainly inform a district court's application of the *Sleekcraft* factors, Ninth Circuit precedent requires us to review the district court's *Sleekcraft*-factor findings for clear error.

In *Levi Strauss & Co. v. Blue Bell, Inc.*, we held unequivocally that "the clearly erroneous standard should be applied in reviewing a trial court's determination concerning likelihood of confusion." 778 F.2d 1352, 1355 (9th Cir. 1985) (en banc). Since *Levi Strauss*, we have further clarified that a district court's individual *Sleekcraft*-factor findings—which guide the ultimate likelihood-of-confusion determination—also should be reviewed for clear error. *Pac. Telesis Grp. v. Int'l Telesis Commc'ns*, 994 F.2d 1364, 1367 (9th Cir. 1993); *Reno Air Racing Ass'n. v. McCord*, 452 F.3d 1126, 1136 (9th Cir. 2006).

We are bound by that precedent. Accordingly, in reviewing the district court's preliminary-injunction decision

for an abuse of discretion, we consider whether the district court clearly erred in finding that Pom Wonderful is unlikely to demonstrate a likelihood of consumer confusion.

## III. Analysis

We now turn our attention to the issue on appeal: whether the district court abused its discretion in denying Pom Wonderful's motion for a preliminary injunction. "A preliminary injunction is an extraordinary and drastic remedy . . . ." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citation and internal quotation marks omitted). In *Winter v. Natural Resources Defense Council, Inc.*, the Supreme Court announced a four-part test that a party seeking a preliminary injunction must satisfy. 555 U.S. 7, 20 (2008). Under the *Winter* test, the moving party must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Id*.

## A. Likelihood of Success

As a threshold matter, Pom Wonderful must establish a likelihood of success on the merits of its trademark infringement claim. To prevail on its claim, Pom Wonderful must demonstrate that (1) it has a protected ownership interest in the "POM" mark, and (2) Pur's use of the word "pŏm" is likely to cause consumer confusion, thereby infringing upon Pom Wonderful's rights. *See Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). Although the district court correctly found that Pom Wonderful is likely to prove that it has a protected ownership interest in the "POM" standard character mark (the

first element of a trademark claim), it committed clear error in finding that Pom Wonderful is unlikely to demonstrate a likelihood of consumer confusion (the second element of a trademark claim).

## 1) Protected Ownership Interest

Registration of a mark is prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration. *See* 15 U.S.C. § 1115(a). When proof of registration is uncontested, the ownership interest element of a trademark infringement claim is met. *See Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996).

The district court correctly found that Pom Wonderful is likely to prove that it has a protected ownership interest in the word "pom" because Pom Wonderful proffered a copy of its "POM" federal trademark registration. This registration was issued in 2002 for use with fruit juices, and Pur does not contest the registration on appeal. The uncontested registration therefore establishes not only the validity of the "POM" mark and Pom Wonderful's ownership of the mark, but also Pom Wonderful's exclusive right to use the mark in connection with fruit juices.[5]  *See* 15 U.S.C. § 1115(a).

---

[5]  "Although the *validity* of a registered mark extends only to the listed goods or services, an owner's *remedies* against confusion with its valid mark are not so circumscribed." *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 971 (9th Cir. 2007). Thus, having "established a protectable interest by proving it is the owner of a registered trademark, [Pom Wonderful] does not additionally have to show that [Pur's] allegedly confusing use involves the *same* goods or services listed in the registration." *Id.* at 972.

Importantly, Pom Wonderful's exclusive right to use the "POM" mark covers all design variations of the word because "POM" was registered as a standard character mark.**[6]** Standard character registrations "are federal mark registrations that make no claim to any particular font style, color, or size of display." *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1349 (Fed. Cir. 2011). Because a word registered in standard characters is "not limited to any particular rendition of the mark," *In re Mighty Leaf Tea*, 601 F.3d 1342, 1348 (Fed. Cir. 2010) (internal quotation marks omitted), the registration covers the word per se, 3 McCarthy on Trademarks and Unfair Competition § 19:58 (4th ed.) (updated Sept. 2014). Therefore, Pom Wonderful's exclusive right to use its "POM" standard character mark is extremely broad, covering the word in all types of depictions.

## 2) Likelihood of Consumer Confusion

Despite Pom Wonderful's exclusive right to use all design variations of its "POM" standard character mark, establishing a protected ownership interest "is only half the battle" in a trademark infringement claim. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999). To demonstrate a likelihood of success on the merits, Pom Wonderful also must show that a reasonably prudent consumer in the marketplace is likely to be confused as to the

---

**[6]** Before 2003, "standard character" marks were called "typed" marks. *See* 3 McCarthy on Trademarks and Unfair Competition § 19:58 (4th ed.) (updated Sept. 2014). Despite the change in nomenclature in 2003, these terms are synonymous and have been interpreted as bestowing the same broad scope of protection to trademark holders. *Id.* Because the "POM" mark was registered in 2002, it is technically registered as a typed mark. However, we refer to it as a standard character mark to reflect modern usage.

origin of Pur's "pŏm" beverage and to associate that beverage with Pom Wonderful. *See Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). We look to the following eight *Sleekcraft* factors for guidance in assessing the likelihood of consumer confusion: (1) strength of the protected mark; (2) proximity and relatedness of the goods; (3) type of goods and the degree of consumer care; (4) similarity of the protected mark and the allegedly infringing mark; (5) marketing channel convergence; (6) evidence of actual consumer confusion; (7) defendant's intent in selecting the allegedly infringing mark; and (8) likelihood of product expansion. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated on other grounds by Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003).

Importantly, although these *Sleekcraft* factors "channel the analytical process," they do not necessarily dictate a result. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002). Because the factors are "fluid," a "plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005). Thus, despite the important role that the *Sleekcraft* factors play in determining whether a likelihood of confusion exists, it is "the totality of facts in a given case that is dispositive." *Entrepreneur Media*, 279 F.3d at 1140 (internal quotation marks omitted).

Our evaluation of the *Sleekcraft* factors and of the totality of the facts in this case leads us to conclude that the district court clearly erred—and therefore abused its discretion—when it found that Pom Wonderful failed to demonstrate that it is likely to show a likelihood of consumer confusion.

Although the district court correctly found that the strength of mark, relatedness of goods, and degree of consumer care factors weighed in favor of Pom Wonderful, it incorrectly found that the similarity of marks, marketing channel convergence, actual confusion, defendant's intent, and product expansion factors weighed against Pom Wonderful. When these errors are corrected and the totality of the facts is considered, it is clear that Pom Wonderful is likely to demonstrate a likelihood of consumer confusion.

### *Strength of Mark*

We begin our likelihood-of-confusion analysis by examining the strength of Pom Wonderful's "POM" mark. The district court correctly found that this factor weighs in Pom Wonderful's favor. The scope of a mark's trademark protection depends on its strength, "with stronger marks receiving greater protection than weak ones." *Entrepreneur Media*, 279 F.3d at 1141; *see also Brookfield*, 174 F.3d at 1058.

To determine the strength of Pom Wonderful's "POM" mark, we begin by placing it on the conceptual distinctiveness spectrum. *See Brookfield*, 174 F.3d at 1058. On this spectrum, the most distinctive marks—i.e., arbitrary and fanciful marks—receive the most trademark protection, whereas the least distinctive marks—i.e., generic marks— receive no trademark protection. *Entrepreneur Media*, 279 F.3d at 1141. Suggestive and descriptive marks lie between these two extremes, with suggestive marks being entitled to greater protection than descriptive marks. *Id.* Unlike descriptive marks, which "define qualities or characteristics of a product in a straightforward way," suggestive marks convey impressions of goods that require the consumer to

"use imagination or any type of multistage reasoning to understand the mark's significance." *Id.* at 1141–42 (internal quotation marks omitted).

The district court correctly found that the "POM" mark is suggestive because the word "POM"—which is not ascribed independent pomegranate-related meaning by conventional dictionaries—requires customers to use some additional imagination and perception to decipher the nature of Pom Wonderful's goods. This finding, however, does not by itself render the "POM" mark strong because suggestive marks, although stronger than descriptive or generic marks, are still "presumptively weak." *Brookfield*, 174 F.3d at 1058. However, we next consider whether the "POM" mark has achieved sufficient marketplace recognition to transform it into a strong mark. *See id.* (explaining that "placement within the conceptual distinctiveness spectrum is not the only determinant of a mark's strength" and that actual marketplace recognition can "transform a suggestive mark into a strong mark"); *see also Entrepreneur Media*, 279 F.3d at 1144 (explaining that suggestive marks "may be strengthened by such factors as extensive advertising, length of exclusive use, [and] public recognition") (internal quotation marks omitted).

Considering the national scope of Pom Wonderful's sales and marketing efforts, the district court correctly found that Pom Wonderful enjoys sufficient marketplace recognition to render its "POM" mark commercially strong. Pom Wonderful is the leading supermarket-seller of 100% pomegranate juice nationwide and in several major cities. Since 2002—when Pom Wonderful first acquired the exclusive right to use all iterations of the "POM" mark in connection with fruit juices—Pom Wonderful has sold more than 190 million bottles of juice. And, Pom Wonderful

extensively markets its products through a wide variety of outlets, including television and newspaper ads, web media, billboards, trade shows, and charity events. In light of this evidence, which is uncontested on appeal, the district court correctly found that Pom Wonderful is likely to demonstrate that the "POM" mark is strong.

### *Relatedness of Goods*

The district court also correctly found that Pom Wonderful is likely to demonstrate that its juice beverages are related to Pur's "pŏm" energy drink. "Related goods (or services) are those 'which would be reasonably thought by the buying public to come from the same source if sold under the same mark.'" *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1212 (9th Cir. 2012) (quoting *Sleekcraft*, 599 F.2d at 348 n.10). To satisfy the relatedness factor, parties need not be direct competitors, *id.*; *see also Entrepreneur Media*, 279 F.3d at 1147 (explaining that goods are related when both companies offer products relating to the same general industry), so long as the goods "are similar in use and function," *Sleekcraft*, 599 F.2d at 350.

The district court correctly found—and Pur does not contest—that fruit-juice beverages and fruit-flavored energy drinks are sufficiently complementary and related that a reasonable consumer could connect them and be confused regarding the source of the products. Both beverages are pomegranate-based or pomegranate-flavored, single-serve, and marketed for their healthful properties. Although Pur's "pŏm" carbonated energy drink is somewhat different from Pom Wonderful's 100% juice beverages, the use and function of these products is clearly related. Accordingly, the district court correctly weighed this factor in Pom Wonderful's favor.

### *Degree of Consumer Care*

We further conclude that the district court correctly found that Pom Wonderful is likely to demonstrate that consumers exercise a low degree of care and sophistication when selecting inexpensive, single-serve beverages like Pom Wonderful's juices or Pur's "pŏm" energy drink. Unlike purchasers of expensive goods—whom we expect to be more discerning and less easily confused—purchasers of inexpensive goods "are likely to exercise less care, thus making confusion more likely." *Brookfield*, 174 F.3d at 1060. Here, the district court found that the beverages at issue cost between $1.99 and $2.49, and neither party disputes this finding on appeal. Accordingly, the district court properly weighed this factor in Pom Wonderful's favor because consumers are likely to exercise a low degree of care when purchasing either company's inexpensive pomegranate beverages.

### *Similarity of Marks*

The district court, however, clearly erred in finding that the similarity–of–marks factor weighed against Pom Wonderful. This factor is always important in determining whether a likelihood of confusion exists because when "marks are entirely dissimilar, there is no likelihood of confusion." *Id.* at 1054. Accordingly, as the similarities between two marks increase, so too does the likelihood of confusion. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000). The following axioms define and delimit the similarity analysis: (1) similarity is best evaluated by appearance, sound, and meaning; (2) marks should be considered in their entirety and as they appear in the

marketplace[7]; and (3) similarities weigh more heavily than differences. *See Entrepreneur Media*, 279 F.3d at 1144. With these constraints in mind, it is clear that the similarity factor weighs in Pom Wonderful's favor.

Turning first to the appearance of the "POM" mark on the left and the "pŏm" mark on the right, the marks possess many obvious visual similarities.


EOR 406

EOR 429

Most significantly, each mark is comprised of the same three letters. These three letters are presented in the same order, with a stylized second letter (i.e., the "o" in "POM" is heart-

---

[7] Pom Wonderful argues that it is improper for this court to consider the products' trade *dress* (i.e., their packaging and labeling) when assessing the similarity of the products' trade*marks*. We disagree. This court "does not consider the similarity of the marks in the abstract, but rather in light of the way the marks are encountered in the marketplace and the circumstances surrounding the purchase." *Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1174 (9th Cir. 2007) (internal quotation marks omitted). Because consumers will encounter "POM" and "pŏm" as they appear on their respective labels and advertising materials, we consider these items when reviewing the marks' visual similarities. Although the "POM" mark at issue is a word mark (i.e, it does not contain design elements), we consider the "POM" design mark that includes a heart-shaped "O" in evaluating the mark's visual similarities because "the only images of Pom Wonderful's products included in the preliminary injunction record [show that] the 'O' in 'POM' is in the shape of a heart." Order 31–32.

shaped, and the "o" in "pŏm" has a breve over it). In addition, the letters in both marks are uniformly cased (i.e., they are either all uppercase, or all lowercase) and presented in a simplistic, white front that is offset by a dark maroon background.

Admittedly, the marks also possess some visual dissimilarities, particularly when we consider the marks in the context of their respective labels, with the Pom Wonderful bottle on the left, the front of the Pur can in the center, and the back of the Pur can on the right.



EOR 406



EOR 429



EOR 238

As these images reveal, the presentation of the marks differs in terms of prominence, font, size, and capitalization (i.e., "POM" is prominently displayed at the top of the bottle in thicker font and larger uppercase letters, whereas "pŏm" is placed near the bottom of the front of the can[8] in slimmer font and smaller lowercase letters). In addition, the middle letter in each mark is stylized differently (i.e., the "o" in "POM" is shaped like a heart and is filled-in with red color, whereas the "o" in "pŏm" has a breve over it and is not filled-in with color).

However, because "[l]ooks aren't everything," we next compare the marks' sound and meaning. *Brookfield*, 174 F.3d at 1055. As for the sound of the marks, the district court found that "POM" and "pŏm" are pronounced in precisely the same manner. Because neither party contests this finding on appeal, we agree that the marks are aurally identical.

As for the meaning of the marks, the district court found that "POM" and "pŏm" mean precisely the same thing, as "each refers to pomegranate flavoring and/or ingredients." Order 33. Because neither party contests this finding on appeal, we agree that the marks are semantically identical. This similarity is particularly noteworthy because "[c]loseness in meaning can itself substantiate a claim of similarity of trademarks." *Sleekcraft*, 599 F.2d at 352.[9]

---

[8] However, "pŏm" is more prominently placed near the top of the back of the can where a consumer would look for nutrition facts. The record also reflects that Pur displays the "pŏm" mark in its advertising and promotional materials with varying degrees of prominence.

[9] Non-visual similarities are particularly important where, as here, there is no evidence that consumers encounter the marks side-by-side in the marketplace. To illustrate the potential that aural and semantic similarities

Balancing the marks' many visual similarities, perfect aural similarity, and perfect semantic similarity more heavily than the marks' visual dissimilarities—as we must[10]—the similarity factor weighs heavily in Pom Wonderful's favor. And, because a lesser degree of similarity is required when a trademark holder's mark is strong, the commercial strength of the "POM" mark amplifies the significance of the marks' many similarities. *See Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1174 (9th Cir. 2007) ("[T]he fact that the similarity involves the use of a much stronger mark would make that similarity weigh more heavily in the analysis of this factor." (Internal quotation marks omitted)). Mistakenly weighing the marks' differences more heavily than their similarities, the district court clearly erred in finding that the similarity of marks factor weighed against Pom Wonderful.

### *Marketing Channel Convergence*

The district court also clearly erred in finding that the marketing channel convergence factor weighed against Pom Wonderful. Just as visual, aural, and semantic similarities between marks increase the likelihood of confusion, so too do convergent marketing channels. *Sleekcraft*, 599 F.2d at 353. In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the

---

increase the likelihood of consumer confusion, consider the confusion that could arise if one verbally asked a friend to buy "a 'POM' drink," intending that the friend purchase a Pom Wonderful product for him or her. Unless the friend is already familiar with the requester's pomegranate beverage preferences, the friend could easily return with Pur's "pŏm" beverage, having reasonably concluded that "pŏm" is pronounced the same, and has the same meaning, as the drink requested.

[10] *See Enterpreneur Media*, 279 F.3d at 1144.

parties advertise and market their products. *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987). Marketing channels can converge even when different submarkets are involved so long as "the general class of . . . purchasers exposed to the products overlap." *See Sleekcraft*, 599 F.2d at 353 (finding convergence where both companies sold boats to authorized retail dealers in diverse localities, used the same sales methods, advertised extensively through different national magazines, and priced their products almost identically).

Here, it is likely that Pom Wonderful will be able to show that both companies use parallel market channels. First, both companies sell their products in supermarkets located throughout the United States. As the top-supermarket seller of pomegranate juice, Pom Wonderful sells its products all over the country and in key cities such as Los Angeles, Chicago, New York, Boston, Atlanta, Dallas, Pittsburgh, and Charlotte. Pur, in turn, sells its products to distributors and supermarkets in Alaska, Washington, Idaho, Montana, North Dakota, South Dakota, Minnesota, Indiana, Michigan, Ohio, Nevada, Arizona, New Mexico, Texas, Utah, and Colorado. In addition to selling their products in at least one overlapping state (Texas),[11] both companies sell their products in an overlapping supermarket chain (Albertson's). Although it is unclear whether Pom Wonderful and Pur products are sold simultaneously in the same Albertson's stores, this uncertainty does not alter our analysis because a

---

[11] Because Pom Wonderful is the leading seller of 100% pomegranate juice beverages in supermarkets nationwide, it is possible that its products are sold in other states that also sell Pur's "pŏm" beverage. However, the preliminary injunction record is not sufficiently developed to allow us to draw this inference.

channel of trade is not limited to identical stores or agents. *See Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 877 (Fed. Cir. 1992) (explaining that "a channel of trade includes the same type of distribution channel" and that channels converge "when products [are] sold under opposing marks in supermarkets and grocery stores across the country").

Second, the products at issue are highly similar. Both companies sell pomegranate-based or pomegranate-flavored beverages that are inexpensive and marketed to health-conscious consumers. *See Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1244 (9th Cir. 1984) (finding market channel convergence where the goods at issue—pens—were "essentially interchangeable," "inexpensive," and "disposable"). Although Pom Wonderful advertises its products using a much broader range of outlets than Pur uses, the similarities between the products suggest an overlapping general class of consumers.

Because Pom Wonderful and Pur sell highly similar products in supermarkets located across the country, the marketing channel convergence factor weighs in Pom Wonderful's favor. The district court clearly erred in finding that this factor weighed against Pom Wonderful, mistakenly requiring Pom Wonderful to prove that its beverages were sold in the very same brick-and-mortar stores as Pur's "pŏm" beverage. Although such proof would surely increase the likelihood of consumer confusion, the absence of identical channels does not, by itself, undermine Pom Wonderful's likelihood of proving that the marketing channels converge.

### *Actual Confusion, Defendant's Intent, & Product Expansion*

Turning to the remaining *Sleekcraft* factors—actual confusion, defendant's intent, and product expansion—we determine that the district court clearly erred by weighing these factors against Pom Wonderful when, in the context of this case, these factors are simply neutral. Although the district court correctly found that Pom Wonderful failed to adduce evidence of actual past confusion between its products and Pur's products, of Pur's intent to deceive when it adopted the "pŏm" mark, or of either party's plans to expand their products into new markets, the district court incorrectly found that the absence of such proof weighed against Pom Wonderful.

Failing "to prove instances of actual confusion is not dispositive against a trademark plaintiff" because "difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." *Perfumebay.com*, 506 F.3d at 1176 (internal quotation mark and emphasis omitted); *see also Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1072–73 (9th Cir. 2014) (explaining that actual confusion is "of diminished importance" at the preliminary injunction stage because "a motion for preliminary injunction normally occurs early in litigation," before the parties "have amassed significant evidence of actual confusion").

Similarly, evidence of the defendant's intent to confuse customers or of product expansion is not required for a finding of likelihood of confusion. *See GoTo.com*, 202 F.3d at 1208 (characterizing the intent factor as minimally important and explaining that intent to confuse consumers is not necessary to demonstrate a likelihood of confusion);

*Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 509 (9th Cir. 2011) (characterizing the product expansion factor as "neutral" because neither party presented evidence regarding the likelihood of expansion).

The absence of any proof regarding actual confusion, the defendant's intent, and product expansion does not affect our likelihood-of-confusion analysis. Pom Wonderful's lack of evidence with respect to these factors neither undermines nor advances its ability to prove likelihood of confusion. Thus, we conclude that the district court clearly erred by weighing these factors against Pom Wonderful.

### Totality of the Facts

Our review of the *Sleekcraft* factors reveals that five factors weigh in favor of Pom Wonderful (strength of mark, relatedness of goods, degree of consumer care, similarity of marks, and marketing channel convergence) and three factors are neutral (actual confusion, defendant's intent, and product expansion). None of the factors weighs in favor of Pur. Sheer numerosity of *Sleekcraft* factors, however, is not by itself dispositive of the ultimate likelihood-of-confusion determination. *See Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1395 (9th Cir. 1993). Accordingly, we next consider whether—in light of the totality of the facts—the district court's likelihood-of-confusion determination rises to the level of clear error. *See Entrepreneur Media*, 279 F.3d at 1140.

When reviewing the district court's determination of likelihood of confusion for clear error, we will not reverse merely because we would have weighed the evidence differently. *Reno Air Racing*, 452 F.3d at 1135. Despite this

deferential standard, we nonetheless conclude that the district court clearly erred in finding that Pom Wonderful is unlikely to demonstrate a likelihood of consumer confusion. This finding is not plausible on the preliminary injunction record because the district court mistakenly (1) weighed the differences between the "POM" and "pŏm" marks more heavily than the similarities, (2) interpreted the marketing channels factor as requiring Pom Wonderful to prove that it sells its products in the same stores as Pur, and (3) weighed three neutral factors against Pom Wonderful.

When these errors are corrected and the totality of the facts is considered, it is clear that Pom Wonderful is likely to show that consumers are likely to be confused as to the source of Pur's "pŏm" beverage. Pur's beverage not only bears a mark that is visually, aurally, and semantically similar to Pom Wonderful's commercially strong "POM" mark—which Pom Wonderful has used exclusively since 2002—but also is designed for the same use and sold to the same general class of consumers as Pom Wonderful's juice beverages at a price point where consumer discernment is weak. Accordingly, the district court's likelihood-of-confusion finding leaves us with the "definite and firm conviction that a mistake has been committed." *See Lahoti*, 586 F.3d at 1196.

## B. Irreparable Harm, Equities, & Public Interest

The district court also addressed the other three *Winter* elements: likelihood of irreparable harm, balance of the equities, and the public interest. The court found that these elements, too, weighed against the issuance of an injunction based, in significant part, on its conclusion that Pom Wonderful is unlikely to establish a likelihood of consumer

confusion.  Because the district court's erroneous likelihood-of-confusion determination clearly influenced its rulings on the remaining *Winter* elements, we cannot determine on this record how the district court would have ruled on these *Winter* elements had it correctly found that Pom Wonderful is likely to succeed on the merits of its trademark infringement claim.

Accordingly, we remand this case to the district court with instructions that it reconsider the final three *Winter* elements in light of our holding that Pom Wonderful is likely to succeed on the merits of its trademark infringement claim. When evaluating the likelihood-of-irreparable-harm element, the district court should consider *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1249, 1250–51 (9th Cir. 2013) (holding that a plaintiff seeking a preliminary injunction in a trademark infringement case must establish a likelihood of irreparable harm that is grounded in evidence, not in conclusory or speculative allegations of harm), *cert denied*, 135 S. Ct. 57 (2014), and allow the parties to submit any additional evidence that the district court deems appropriate.

## IV. Conclusion

For the foregoing reasons, we conclude that the district court abused its discretion in denying Pom Wonderful's motion for a preliminary injunction because it made a clear error in its determination of no likelihood of confusion.[12] Because the district court's likelihood-of-success

---

[12] In reaching this conclusion we express no opinion on the ultimate merits of the case.  *See, e.g.*, *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1238 (9th Cir. 1999).

determination tainted its evaluation of the remaining three *Winter* elements, we reverse and remand this case with instructions that the district court consider whether Pom Wonderful can meet its burden of proving that it will suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in its favor, and that injunctive relief would further the public interest.

**REVERSED and REMANDED.**