NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 15 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MONSTER ENERGY COMPANY, a
Delaware Corporation,

              Plaintiff - Appellant,

    v.

JIANGSU SITOUGUAI INDUSTRY CO.,
LTD., a Chinese Corporation;
CHANGZHOU HAIGE MICROFIBER
TEXTILE CO., LTD., a Chinese
Corporation,

              Defendants - Appellees.

No. 24-6521

D.C. No.
3:22-cv-00590-LL-DDL

MEMORANDUM*

Appeal from the United States District Court
for the Southern District of California
Linda Lopez, District Judge, Presiding

Argued and Submitted October 6, 2025
Pasadena, California

Before: GILMAN, GOULD, and KOH, Circuit Judges.**

        Plaintiff-Appellant Monster Energy Company ("Monster Energy") is a

---

*        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

**        The Honorable Ronald Lee Gilman, United States Circuit Judge for
the Court of Appeals, Sixth Circuit, sitting by designation.

leader in the energy drink market. Monster Energy also produces branded merchandise (such as towels and backpacks) bearing Monster Energy's logo and signature green and black trade dress. Monster Energy has trademark registrations for both its beverage products and its non-beverage products. Defendants-Appellees Jiangsu Sitouguai Industry Co. ("4Monster") and Changzhou Haige Microfiber Textile Co. ("Haige") (collectively, "Defendants") produce camping equipment (such as backpacks and towels) under the name "4Monster."

Monster Energy sued Defendants for trademark infringement, trade dress infringement, and unfair competition. Specifically, Monster Energy alleged that Defendants' use of the "4Monster" mark was likely to cause confusion among consumers as to whether Monster Energy produces Defendants' goods. The district court granted summary judgment to Defendants. Monster Energy timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's order de novo, and we consider the record in the light most favorable to Monster Energy. *See Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1159 (9th Cir. 2021). We reverse and remand for further proceedings in accordance with this disposition.

"The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*,

142 F.3d 1127, 1129 (9th Cir. 1998). The analysis is guided by eight factors:

> (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

*Lodestar Anstalt v. Bacardi & Co. Ltd.*, 31 F.4th 1228, 1252 (9th Cir. 2022) (quoting *Ironhawk Techs.*, 2 F.4th at 1160). "These factors are neither exhaustive nor dispositive; it is the totality of facts in a given case that is dispositive." *Id.* at 1252 (quoting *Ironhawk Techs.*, 2 F.4th at 1160). "Due to the fact-intensive nature of trademark infringement claims, we grant motions for summary judgment infrequently." *Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 718 (9th Cir. 2024). "Nevertheless, when no genuine issue of material fact exists, we have not hesitated to affirm a grant of summary judgment." *Id.*

Here, a genuine issue of material fact exists as to likelihood of confusion.[1] As to the first factor, mark strength, Monster Energy's marks are conceptually distinctive and therefore "trigger the highest degree of trademark protection." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1107 (9th Cir. 2016) (internal quotation marks and citation omitted). Monster Energy's marks are also commercially strong both as to beverage products and non-beverage products.

---

[1] Each of Monster Energy's claims rises or falls on whether a likelihood of confusion exists. *See Dreamwerks*, 142 F.3d at 1129 n.2 (treating common law and Lanham Act claims as coextensive).

"Commercial strength is based on actual marketplace recognition." *Id.* (internal quotation marks and citation omitted). Viewing the evidence in the light most favorable to Monster Energy, a jury could find that Monster Energy's wide distribution of non-beverage merchandise goods has created widespread marketplace recognition for Monster Energy's non-beverage marks.

For the second factor, the relatedness of goods, a jury could find that the parties' products are "similar in use and function," "complementary," or intended for the "same class" of consumers. *Ironhawk Techs.*, 2 F.4th at 1163. Monster Energy's non-beverage goods include towels and backpacks that are "similar in use and function" to Defendants' towel and backpack products. *Id.* Likewise, a reasonable juror could conclude that the end consumers for both parties' goods are the general buying public because Monster Energy licenses its marks to retailers. Finally, as to Monster Energy's beverage goods, a reasonable juror could find that energy drinks are complementary to 4Monster's camping-related textile goods because Monster Energy markets its beverage products as adjacent to extreme sport and outdoor adventure activities. Thus, the relatedness of goods factor weighs in Monster Energy's favor.

A reasonable juror could also find that the third factor, the similarity of the marks, favors Monster Energy. Both marks prominently feature the word "Monster." *See Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1211-12 (9th

Cir. 2012) (finding that common use of the name "Rearden" made two marks more than "somewhat" similar). And 4Monster's products commonly utilize the exact same shade of green as Monster Energy's signature trade dress. Thus, although the parties' marks differ in some respects, a reasonable juror could find that the marks are confusingly similar. *See Ironhawk Techs.*, 2 F.4th at 1164 (explaining that "similarities are weighed more heavily than differences" (cleaned up)).

Likewise, as to the fourth factor—evidence of actual confusion—Monster Energy's survey evidence creates a genuine dispute of material fact when the survey evidence is viewed in the light most favorable to Monster Energy. *See Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1026 n.28 (9th Cir. 2004). "Defendants may have valid criticism of [an expert's] methods and conclusions, and their critique may justify reducing the weight eventually afforded [the] expert report." *Id.* at 1027. But a district court's "weighing" of "admissible evidence at [summary judgment] is improper." *Id.* Defendants' arguments are best directed to a jury. *See id.*

The sixth factor, the type of goods and the degree of care likely to be exercised by the purchaser, also weighs in Monster Energy's favor. The low-cost goods at issue make confusion more likely because customers are unlikely to exercise a high degree of care. *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999) (explaining that purchasers of

inexpensive goods "are likely to exercise less care, thus making confusion more likely").

As to the fifth factor, the marketing channels used by the parties somewhat overlap, but not in a significant manner. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014) (explaining that "a channel of trade is not limited to identical stores or agents"). For the seventh factor, Monster Energy has not presented evidence of 4Monster's intent in selecting the 4Monster mark. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1208 (9th Cir. 2000) (explaining that this factor is of "minimal importance"). And for the eighth factor, although there is no evidence of 4Monster's expansion into Monster Energy's core energy drink business, the parties offer similar towel and backpack products, and the extent of the parties' competition in such goods is unclear. *See Brookfield,* 174 F.3d at 1060 (explaining that this factor carries less weight when parties offer competing goods).

Considering the above factors collectively, a genuine dispute exists as to "whether the consuming public is likely somehow to associate [4Monster's] products with [Monster Energy]." *Brookfield*, 174 F.3d at 1056. Because a reasonable juror could find a likelihood of confusion, summary judgment in favor of 4Monster was inappropriate.

**REVERSED and REMANDED.**

24-6521