MOROCCANOIL, INC., a California corporation; and Moroccanoil Israel Ltd., an Israeli limited company, Plaintiffs,

v.

ZOTOS INTERNATIONAL, INC., a New York corporation; and Does 1 through 20, inclusive, Defendants.

**Case No. CV 16–7004 DMG (AGRx)**

United States District Court, C.D. California.

Signed 01/19/2017

---

Evan Pitchford, Mark D. Kremer, Zachary T. Page, Conkle Kremer and Engel PLC, Santa Monica, CA, for Plaintiff.

Erin R. Ranahan, Jennifer A. Golinveaux, Kelly Nicole Oki, Diana Hughes Leiden, Winston and Strawn LLP, Los Angeles, CA, for Defendant.

## ORDER RE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [17]

DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

## I.

### PROCEDURAL BACKGROUND

On September 16, 2016, Plaintiffs Moroccanoil, Inc. and Moroccanoil Israel Ltd. (collectively, "Moroccanoil") filed their Complaint against Defendant Zotos International, Inc. ("Zotos") alleging (1) trademark infringement under 15 U.S.C. § 1114; (2) trademark infringement and unfair competition under 15 U.S.C. § 1125(a); (3) common law trademark infringement and unfair competition; (4) breach of contract; (5) false advertising under 15 U.S.C. § 1125(a); (6) unfair business practices under Cal. Bus. and Prof. Code §§ 17200 and 17500; (7) trade secret misappropriation under 18 U.S.C. § 1836(b); and (8) trade secret misappropriation under Cal. Civil Code § 3426. [Doc. # 1.]

On November 10, 2016, Moroccanoil filed a motion for a preliminary injunction

("Mot."). [Doc. # 17.] On November 18, 2016, Zotos filed its opposition. [Doc. # 23.] On November 23, 2016, Moroccanoil filed its reply. [Doc. # 26.] On December 7, 2016, with the Court's leave, Zotos filed a sur-reply. [Doc. # 42.]

On December 9, 2016, the Court held a hearing and requested the parties file simultaneous supplemental briefing on the amount of bond necessary to safeguard Zotos in the event the preliminary injunction is determined to be improvidently granted. [Doc. # 46.] On December 16, 2016, the parties filed supplemental briefs ("First Suppl."). [Doc. ## 56, 57.] On December 23, 2016, the parties filed responses to the supplemental briefs ("Second Suppl."). [Doc. ## 64, 70.]

Having duly considered the parties' written submissions and oral argument, the Court **GRANTS** Moroccanoil's motion for preliminary injunction for the reasons set forth below.

## II.

### FACTUAL BACKGROUND [1]

Launched in 2007, Moroccanoil distributes hair and body care products in the

United States featuring "argan oil to revitalize and replenish hair." Compl. ¶¶ 12, 15. Each of its products bear one or more trademarks, including: (a) the word "Moroccanoil"—United States Patent and Trademark Office ("USPTO") Registration No. 3,478,807; (b) "M Moroccanoil Design"—with the word Moroccanoil in white vertical lettering next to the letter M in copper orange on a turquoise blue background, USPTO Registration No. 3,684,910 ("Vertical Design Mark"); and "M Moroccanoil Design"—with the word Moroccanoil in white horizontal lettering through the letter M in copper orange on a turquoise blue background, USPTO Registration No. 3,684,909 ("Horizontal Design Mark") (the "Vertical Design Mark" and "Horizontal Design Mark" collectively, the "Moroccanoil Trademarks"). *Id.* ¶ 18; *see also* Declaration of Nicole Sands in support of Pls.' Mot. ("Sands Decl.") ¶¶ 4–5, Exs. 3–4 [Doc. # 17–1 at p. 22]. The Moroccanoil Trademarks were registered on September 22, 2009, and a declaration of incontestability for each of the trademarks was accepted by the USPTO on January 9, 2015. *Id.* The Moroccanoil Trademarks are displayed in the images below.

Vertical Design Mark

(Reg. No. 3,684,910)

Horizontal Design Mark

(Reg. No. 3,684,909)

Mot. at 5.

Moroccanoil has sold its products in

---

**1.** The Court does not address Moroccanoil's objections to Exhibit 4 to the Declaration of Diana Hughes Leiden because it did not con-sider the document in resolving the Motion. [Doc. # 31.]

packaging that includes at least each of the following elements individually or in combination with one another: (1) a distinctive turquoise blue color; (2) copper orange lettering, graphics and background design elements; (3) copper orange and white letting, the word "MOROCCANOIL" in vertical and horizontal orientation, graphics and background design elements on a turquoise blue background; and (4) an amber bottle packaged in a rectangular blue box (the "Moroccanoil Trade Dress"). Compl. ¶ 20. Moroccanoil's product packaging is displayed in the images below.

Sands Decl. ¶ 3, Ex. 2.

Moroccanoil is known as a "high-quality, premium hair care brand" and takes "significant steps to ensure that it controls and maintains its high-end, high-quality status in the marketplace." Declaration of Jay Elarar in support of Pls.' Mot. ("Elarar Decl.") ¶ 3 [Doc. 17–1 at p. 6]. Since 2007, it has spent a substantial amount of money in advertising directed to the United States. Declaration of Allan Weizmann in support of Pls.' Mot. ("Weizmann Decl.") ¶ 4 [Doc. # 17–1 at p. 30]. Its products are sold on its own website as well as "premium" salons and spas, "high-end" retailers such as Saks, Neiman Marcus, Barneys, Nordstrom and Sephora, and "upscale" beauty supply stores such as Planet Beauty and Design Collection. Elarar Decl. ¶¶ 3–5, 7–8.

Zotos is a "professional beauty industry leader that manufactures and markets a range of hair care products." Compl. 14; see also Declaration of Elizabeth Kenny in support of Def.'s Mot. ("Kenny Decl.") ¶ 3 [Doc. # 23–2]. In 2014, Zotos and Moroccanoil explored a possible business relationship whereby Zotos would manufacture certain hair care products for Moroccanoil. Compl. ¶¶ 49, 51; see also Declaration of Gloria Hoo ("Hoo Decl.") in support of Pls.' Mot. ¶ 2 [Doc. # 17–1 at p. 13]; Declaration of Laura Salley in support of Def.'s Mot. ("Salley Decl.") ¶ 4 [Doc. # 23–3]. On October 1, 2014, the parties signed a Non–Disclosure Agreement regarding the potential business arrangement. Id. Moroccanoil and Zotos had no substantive communications from late 2014 through early 2016. Salley Decl. ¶ 5. In September of 2016, Moroccanoil advised Zotos that it was not moving forward with any potential business opportunity. Id. ¶ 9.

In or around July, 2016, Zotos began to market and sell a line of hair care products featuring argan oil known as "Luxe Majestic Oil" ("Majestic Oil). Compl. ¶ 14; see also Declaration of Bruce Selan in support of Def.'s Mot. ("Selan Decl.") ¶ 4 [Doc. # 23–4]. Zotos sells its products in packaging that includes the term "MAJESTIC OIL" in vertical white lettering with an orange fleur-de-lis symbol in front of a blue background, as displayed in the images below.

Kenny Decl. ¶ 7.

The largest seller of its hair care products is Sally Beauty Supply, a retailer chain that sells beauty supplies at value prices. *Id.* ¶ 4. Zotos' products appeal to consumers in the market for "a lower-priced alternative to hair care brands that are typically sold at higher price points at high-end department stores and salons." *Id.* ¶ 5. Zotos promotes its "Luxe Majestic Oil" line of products with flyers, in-store displays and emails that state: "Compare to Moroccanoil® and Save" and "If you like Moroccanoil® products, you'll LOVE our new Luxe Majestic Oil line." *Id.* ¶¶ 11–13, Exs. 1–3.

Moroccanoil alleges that Zotos' line of products appear to be designed "specifically to mimic and poach the Moroccanoil Trademarks and the Moroccanoil Trade Dress." Compl. ¶ 21. It seeks a preliminary injunction "to preserve the status quo that preceded Zotos' infringement of Moroccanoil's longstanding trademarks and trade dress." Mot. at 1; *see also* Compl. ¶¶ 31, 39.

### III.

### LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions. Fed. R. Civ. P. 65(a). Plaintiffs seeking injunctive relief must show that (1) they are likely to succeed on the merits;

(2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)).

Under the Ninth Circuit's "sliding scale" approach to preliminary injunctions, the four "elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, "a preliminary injunction could issue where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.'" *Id.* at 1131–32. Put differently, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements [likelihood of irreparable injury and public interest] of the *Winter* test are also met." *Id.* at 1132.

## III.

## DISCUSSION

### A. Likelihood of Success on the Merits

#### 1. Whether The Marks Are Valid and Enforceable

 To succeed on a claim for trademark infringement, the plaintiff must demonstrate: (1) the presence of a valid and protectable trademark; and (2) that defendant's use of the mark "is likely to cause consumer confusion." *Aurora World, Inc. v. Ty Inc.*, 719 F.Supp.2d 1115, 1141 (C.D. Cal. 2009) (citing *Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006)). "[R]egistration of the mark on the Principal Register in the Patent and Trademark Office [USPTO] constitutes prima facie evidence of the validity of the registered mark ...." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999). Here, Moroccanoil proffered evidence that its Trademarks are registered and incontestable. Mot. at 9; Sands Decl. ¶¶ 4–5, Exs. 3–4. Zotos does not dispute the validity of the Moroccanoil Trademarks, but does challenge whether the Moroccanoil Trade Dress is valid and enforceable.

 "In contrast to a trademark, 'trade dress' refers to the 'total image of a product' and may include features such as size, shape, color, color combinations, texture or graphics." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993) (citation omitted). In order to state a valid claim for relief, the plaintiff must show the alleged trade dress is (1) nonfunctional, (2) distinctive, and (3) creates a likelihood of consumer confusion. *Id.* at 823.

#### i. Functionality

██ ██ A plaintiff's trade dress must be nonfunctional to be protected. *TrafFix Devices v. Mktg. Displays, Inc.*, 532 U.S. 23, 30, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001). A product feature is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998) (citing *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995)). "[F]unctional elements that are separately unprotectable can be protected together as part of a trade dress." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir. 1987).

 Zotos argues the Moroccanoil Trade Dress is functional because elements such as (1) "white lettering on colored packaging;" (2) "placing letters vertically on products;" (3) use of an amber bottle for liquid products; and (4) use of the turquoise color are "common in hair care products." Opp. at 12. As noted above, however, the focus of a trade dress claim is not on the individual elements, but on the "overall visual impression that the combination and arrangement of those elements create." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001). Here, Moroccanoil's arrangement of the individual elements of its Trade Dress appears to serve a purely aesthetic purpose comprised of specific colors, fonts and styles. *Id.* at 1260 (findings purely aesthetic features cannot be functional). There is also no evidence that Moroccanoil's packaging is essential to the "cost or quality" of the product such that exclusive use would put a competitor at a "non-reputation-related disadvantage." Thus, taken as a whole, the Moroccanoil Trade Dress is nonfunctional.[2]

**2.** Zotos requests that the Court take judicial notice of the Notice of Opposition filed on

March 7, 2016 by Tiffany (NJ) LLC with the

### ii. Distinctiveness

 Distinctiveness requires the trade dress be "capable of distinguishing the applicant's goods from the goods of others." *Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998). Suggestive, arbitrary, or fanciful trade dresses are inherently distinctive, while descriptive trade dress can satisfy this element if it acquires secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768–69, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Thus, to establish that the mark is capable of being protected, plaintiff must establish that the mark is "either (1) inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Id.* at 769, 112 S.Ct. 2753 (emphasis omitted).

 Here, Moroccanoil contends that its Trade Dress is suggestive and therefore inherently distinctive because "it requires imagination, thought and perception to reach a conclusion as to the nature of goods." Mot. at 11 (quoting *Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1019 (9th Cir. 1979)). Zotos does not address the element of distinctiveness except to state Moroccanoil's arguments are conclusory. Opp. at 14. The Court agrees with Moroccanoil. The Moroccanoil Trade Dress is based on packaging which does not appear to have any inherent meaning and does not describe the product. Instead, its function is identification. A mark is inherently distinctive if "[its] intrinsic nature serves to identify a particular source." *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000) (citation omitted). Thus, a showing of secondary meaning is not required.

In sum, the Court finds Moroccanoil establishes evidence that its Trademarks and Trade Dress are valid and enforceable marks.

### 2. Likelihood of Confusion

 Likelihood of confusion exists whenever "consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Nutri/System, Inc. v. Con–Stan Indus., Inc.*, 809 F.2d 601, 605 (9th Cir. 1987) (citation omitted). Whether a mark is confusingly similar is determined by the eight-factor "likelihood of confusion" test from the Ninth Circuit's decision in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979). The eight factors are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Sleekcraft*, 599 F.2d at 348–49. These factors "are intended as an adaptable proxy for consumer confusion, not a rote checklist." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011). "[S]ome factors— such as the similarity of the marks and whether the two companies are direct competitors—will always be important," but the relative importance of each individual factor will be case-specific. *Brookfield Commc'ns*, 174 F.3d at 1054.

Here, as discussed more fully below, after balancing the eight *Sleekcraft* factors,

USPTO challenging the Moroccanoil Trade Dress regarding the use of the color turquoise blue. [Doc. # 24.] As noted above, trade dress refers to the "total image, design, and appearance of a product" and therefore opposition to one element of the Moroccanoil Trade Dress is irrelevant to the disposition of this Motion. *Clicks Billiards*, 251 F.3d at 1257. Accordingly, the Court **DENIES** Zotos' request.

the Court finds there are "serious questions" as to whether a likelihood of confusion exists between Moroccanoil's marks and Zotos' Majestic Oil products.

### i. Strength of Marks

"The stronger a mark—meaning the more likely it is to be remembered and associated in the public mind with the mark's owner—the greater the protection it is accorded by the trademark laws." *Network Automation*, 638 F.3d at 1149 (citing *Brookfield Commc'ns*, 174 F.3d at 1058). In analyzing the strength of a mark, the Court weighs both conceptual strength and commercial strength. *Id.* "Marks can be conceptually classified along a spectrum of generally increasing inherent distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful." *Brookfield Commc'ns*, 174 F.3d at 1058. "Arbitrary or fanciful marks (*i.e.*, Kodak) are called 'strong' marks, whereas descriptive or suggestive marks are 'weak.' " *Nutri/Sys.*, 809 F.2d at 605. "Commercial strength is based on actual marketplace recognition, and thus advertising expenditures can transform a suggestive mark into a strong mark." *Network Automation*, 638 F.3d at 1149 (internal quotations omitted).

Here, Moroccanoil's marks appear to be suggestive because a consumer must make a "mental leap" to understand the term "Moroccanoil" refers to hair and body products that contain argan oil. *Brookfield Commc'ns*, 174 F.3d at 1058 (A mark is "suggestive" when it "requires a mental leap from the mark to the product."). Although suggestive marks are presumptively weak, Moroccanoil has presented evidence that its marks are commercially strong. Since 2007, it has made a significant investment in advertising and enforcement of its brand. Weizmann Decl. ¶ 4. Its products have had tremendous success and received recognition from celebrities, runway stylists and consumers throughout the world. Mot. at 2; Weiz-

mann Decl. ¶¶ 2–3; Sand Decl. ¶¶ 12–13, Exs. 14, 16. Moroccanoil has also been featured in widely circulated magazines such as Vogue, Elle, Marie Claire, People, US Weekly, and CNN featured a segment on its history and success. Mot. at 3; Sand Decl. ¶¶ 10–11, Exs. 12–13; Declaration of David Krzypow in support of Pls.' Mot. ¶ 9, Ex. 15 [Doc. # 17–1 at p. 15]. In contrast, Majestic Oil products recently launched at Sally Beauty in August, 2016. Selan Decl. ¶ 4. Although it has promoted its products with print and online advertisements provided to Sally Beauty, it has not received the same brand recognition as Moroccanoil. Kenny Decl. ¶¶ 11–13, Exs. 1–3. Given the strong commercial strength of the Moroccanoil marks, this factor favors Moroccanoil.

### ii. Proximity of Goods

Goods are proximate if consumers are "likely to associate" the two product lines. *Surfvivor Media, Inc. v. Survivors Prods.*, 406 F.3d 625, 633 (9th Cir. 2005) (citation omitted). To that end, courts also "consider whether the buying public could reasonably conclude that the products came from the same source." *Id.* The Ninth Circuit has held that goods as dissimilar as movies and sci-fi merchandise are proximate goods. *Dreamwerks Prod. Group Inc. v. SKG Studio*, 142 F.3d 1127, 1131 (9th Cir.1998); *see also Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 159–60 (9th Cir. 1963) (whiskey and beer are proximate goods). Here, both companies sell hair products containing argan oil. Thus, this factor favors Moroccanoil.

### iii. Similarity of the Marks

"[T]he similarity of the marks—has always been considered a critical question in the likelihood-of-confusion analysis." *GoTo.com v. Walt Disney Co.*,

202 F.3d 1199, 1205 (9th Cir. 2000). "[T]he more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion." *Brookfield Commc'ns*, 174 F.3d at 1054. When comparing the two marks, courts follow three guiding principles: (1) "the marks must be considered in their entirety and as they appear in the marketplace"; (2) "similarity is adjudged in terms of appearance, sound, and meaning"; and (3) "similarities are weighed more heavily than differences." *GoTo.com*, 202 F.3d at 1206 (citations omitted).

Moroccanoil argues that its Trademarks and Trade Dress are substantially similar to the Zotos' Majestic Oil line of products. Mot. at 13–14. On the shampoo, conditioner, oil treatment and styling cream, Moroccanoil contends the term "Majestic Oil" arranged vertically in white letters with an orange symbol in front of a blue background is similar to Moroccanoil's Vertical Design Mark as well as its Trade Dress. *Id.* at 14. On the mask product, Moroccanoil contends the term "Majestic Oil" arranged horizontally in white lettering over an orange symbol in front of a blue background is similar to Moroccanoil's Horizontal Design Mark and its Trade Dress. *Id.* at 14–15.

Zotos disagrees. It argues the name "Majestic Oil" is distinct from the "Moroccanoil" name, with the only common elements being the first letter and the generic word "oil." Opp. at 15. Moreover, "Majestic" and "Morocco" do not invoke the same meaning because majestic is an adjective used to describe impressive beauty or dignity, while Morocco is a noun that describes a specific place in the world. *Id.* at 16. Zotos also points out that its products do not contain an "orange M" and make no particular emphasis on the letter "M" of Majestic Oil. *Id.* at 15. Although its products have vertical lettering and a blue background, Zotos claims that

vertical lettering is functional and common in hair care products, and that the shades of blue are clearly distinct. *Id.* at 15–16. Zotos also contends that an amber bottle is functional for liquid products. *Id.* at 17.

Here, the Court agrees with Zotos that the product names "Moroccanoil" and "Majestic Oil" are sufficiently distinct, and thus an injunction will not issue as to the name "Majestic Oil." The appearance of the Zotos products, however, is strikingly similar to the Moroccanoil products. Zotos' marks consist of similar white vertical lettering, similar placement of an orange symbol, and a similar blue background. While an amber bottle by itself may be functional, the Majestic Oil product is similarly packaged as the Moroccanoil product with the vertical white lettering and orange symbol against a blue box background.

Thus, after reviewing the parties' arguments and the products themselves, the Court finds there are more similarities in the marks than differences when considered in their entirety and as they appear in the marketplace. This factor therefore favors Moroccanoil.

### iv. Evidence of Actual Confusion

Evidence of "actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion." *Network Automation*, 638 F.3d at 1151 (quotation omitted). Here, there is no evidence of actual confusion. Mot. at 18 n. 3; *see also* Selan Decl. ¶ 8, Kenny Decl. ¶ 17. However, "[b]ecause of the difficulty in garnering such evidence ... [s]urvey evidence may establish actual confusion." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1035 (9th Cir. 2010) (citation omitted); *see also Brookfield Commc'ns*, 174 F.3d at 1050 ("The failure to *prove* instances of actual confusion is

*not* dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy.") (citation omitted, emphasis in original).

Moroccanoil provides a survey conducted by Dr. Michael A. Kamins, currently the Director of Research, Full Professor and Area Head of Marketing with tenure at the Harriman School of Business at Stony Brook University–SUNY. Expert Report of Dr. Michael A. Kamins ("Kamins Report") in support of Pls.' Mot. ¶ 7 [Doc. 17–1 at p. 45.] Dr. Kamins was asked to "conduct an empirical study designed to examine whether or not consumers, or potential consumers of hair care products who purchase such items either on the internet or at a beauty supply store would be confused" between Moroccanoil products and Majestic Oil products. *Id.* ¶ 1. Dr. Kamins' survey found that 41% of respondents believed that Majestic Oil products were manufactured by or associated with Moroccanoil. *Id.* ¶¶ 43–45.

Zotos contends that Kamins' survey is flawed. Opp. at 20. Zotos provides the expert report of Eugene P. Ericksen ("Ericksen Report"), an Emeritus Professor of Sociology and Statistics at Temple University and Special Consultant with NERA Economic Consulting, who opines that Dr. Kamins used the "wrong survey design, and, as a result, produced an artificially high estimate of the confusion rate." Declaration of Diana Hughes Leiden in support of Def.'s Mot. ¶ 8, Ex. 7 at ¶¶ 1, 8 [Doc. # 23–1.] Dr. Ericksen points out the following "critical errors" in Dr. Kamins' use of the Squirt design: (1) the products at issue are not sold in the same stores nor at the same price point; (2) the "survey design did not appropriately reflect market conditions"; (3) the failure to consider the "impact of price" meant that Dr. Kamins studied "the wrong universe"; and

(4) the survey failed to "use appropriate control stimuli." Opp. at 20; Ericksen Report ¶¶ 8–10.

The Squirt design is "most appropriate where a product with a weak mark is sold in close proximity to the alleged infringer in the marketplace." *Isle of Capri Casinos, Inc. v. Flynt*, 2016 WL 6495380, at *6 (C.D. Cal. Nov. 1, 2016). Here, consumers may encounter both marks in close proximity on the Internet on the same websites, such as Amazon, eBay, Sears, Wal-Mart and Sleekhair Beauty. *See Sands* Decl. ¶¶ 17, 21, Exs. 21, 25. Moroccanoil products have been featured on the very same page on the Internet as Majestic Oil products. *Id.* ¶ 21, Ex. 25 at pp. 11, 19, 22, 31–32. Nonetheless, because the products sold on these websites are non-authorized and it is unclear if a significant number of consumers would encounter the marks in close proximity, the Court gives the survey less weight. The survey is still some evidence of actual confusion. *CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F.Supp.2d 1051, 1075–76 (E.D. Cal. 2009) ("It is sufficient for a preliminary injunction motion that plaintiff has proffered survey evidence as *some* evidence of actual confusion.") Accordingly, this factor slightly favors Moroccanoil.

#### v. Marketing Channels Used

 "Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353. The *Sleekcraft* court considered the locations where the goods were sold, the price range of the goods, and the types of advertising used. *Id.* Courts also consider "whether the parties' customer bases overlap." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014). "Marketing channels can converge even when different submarkets are involved so long as 'the general class of . . . purchasers exposed to the

products overlap.'" *Id.* (quoting *Sleekcraft*, 599 F.2d at 353).

Here, Zotos argues that the products serve entirely distinct markets. Opp. at 18. Moroccanoil sells its products in high-end stores such as Saks, Neiman Marcus, Barney's and Nordstrom. Elarar Decl. ¶ 8. On the other hand, Zotos sells its products at the Sally Beauty Supply chain, which serves consumers seeking lower prices. Kenny Decl. ¶ 5. Moroccanoil disagrees, contending the parties' marketing channels overlap because the parties target the same general class of purchasers—female consumers of hair care products. Reply at 8. This is evidenced by Zotos' "efforts to target and capture Moroccanoil customers" through its comparative advertising, such as "If you like Moroccanoil, you'll LOVE Luxe Majestic Oil!" *Id.* at 7. Moroccanoil is also concerned about the sale of both products on non-authorized Internet websites, such as Amazon, eBay, Sears, Wal–Mart and Sleekhair Beauty. Mot. at 16.

The fact that both parties sell products online adds little weight in the overall likelihood of confusion analysis. *Network Automation*, 638 F.3d at 1151 ("[T]his factor becomes less important when the marketing channel is less obscure. Today, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion."); *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004) ("Given the broad use of the Internet today, the same could be said for countless companies. Thus, this factor merits little weight.").

Notwithstanding that the parties sell their products in different marketing channels, the "similarities between the products suggest an overlapping general class of consumers." *See Pom Wonderful*, 775 F.3d at 1131 ("[T]he absence of identical channels does not, by itself, undermine [plaintiff's] likelihood of proving that the marketing channels converge."); *Sleekcraft*, 599 F.2d at 353 (finding convergent marketing channels where both companies sold boats to authorized dealers in diverse localities).

Thus, this factor favors Moroccanoil.

### vi. Type of Goods and Degree of Care Likely to be Exercised by Purchaser

When purchasing inexpensive products, courts generally assume that consumers will exercise less care. *Brookfield Commc'ns*, 174 F.3d at 1060 ("[W]hen dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely."). "Low consumer care, in turn, increases the likelihood of confusion." *Playboy*, 354 F.3d at 1028.

Moroccanoil argues that this factor favors likelihood of confusion because Zotos' products are inexpensive and therefore consumers are not likely to exercise a heightened degree of care. Mot. at 18. In response, Zotos contends consumers will notice a distinction between the products because Zotos "expressly distinguished the products in its marketing." Opp. at 22. As Moroccanoil points out, however, Zotos products are sold on the Internet without the "comparative advertising." Reply at 6; Sands Decl. ¶ 21, Ex. 25; Declaration of Eric S. Engel in support of Pls.' Mot. ¶ 2, Ex. 26 [Doc. 17–1 at p. 11]. Moreover, the term "our" in Zotos' advertisement—"If you like Moroccanoil® products, you'll LOVE our new Luxe Majestic Oil line"—may appear ambiguous to consumers as to whether the companies are associated with each other. Kenny Decl. ¶ 11, Ex. 1. Thus, this factor favors Moroccanoil.

### vii. Defendant's Intent in Selecting the Marks

The Ninth Circuit has previously "emphasized the minimal importance of the intent factor." *GoTo.com*, 202 F.3d at 1208 (citing *Brookfield Commc'ns*, 174 F.3d at 1059). Nonetheless, where "one party knowingly adopts a mark similar to another's . . . courts presume that the defendant will accomplish its purpose, and that the public will be deceived." *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991).

Here, it is undisputed that Zotos was aware of the Moroccanoil Trademarks and Trade Dress when it began selling its Majestic Oil products. In 2014, Zotos and Moroccanoil explored a possible business relationship whereby Zotos would manufacture certain hair care products for Moroccanoil. *See* Hoo Decl. ¶ 2; Salley Decl. ¶ 4. The fact that Zotos was "aware" of Moroccanoil, without more, "provides no *direct* evidence of [Zotos'] judgment concerning likely confusion." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002) ("The inference from knowledge and similarity, however, does not add much in answering the ultimate question here, likelihood of confusion."). Neither side has produced evidence of Zotos' intent in selecting its mark. Thus, the Court cannot make a determination as to Zotos' intent at this time. This factor is therefore neutral.

### viii. Likelihood of Expansion of the Product Lines

"The likelihood of expansion in product lines is relatively unimportant where two companies already compete to a significant extent." *GoTo.com*, 202 F.3d at 1209 (quoting *Brookfield Commc'ns*, 174 F.3d at 1060); *see also Playboy*, 354 F.3d at 1029 ("Because the [defendants'] goods and [plaintiffs'] are already related . . . this factor is irrelevant"). Here, both parties concede that they sell similar hair care products and therefore this factor favors neither Moroccanoil nor Zotos. Mot. at 15; Opp. at 17.

### B. Irreparable Harm

A plaintiff must "demonstrate a likelihood of irreparable injury—not just a possibility—in order to obtain preliminary relief." *Winter*, 555 U.S. at 21, 129 S.Ct. 365. "Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm." *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013). "Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001). "Loss of goodwill may include a change in the marketplace resulting from customers establishing relationships with low-cost infringers." *QBAS Co., Ltd. v. C Walters Intercoastal Corp.*, 2010 WL 7785955, at *12 (C.D. Cal. Dec. 16, 2010).

Moroccanoil argues it is likely to be irreparably harmed by "Zotos' interference with Moroccanoil's ability to maintain its image as a premium brand by selecting its price points and sales and marketing channels." Mot. at 22. In support, Moroccanoil points to the fact that Zotos is clearly targeting Moroccanoil customers with its advertisements: "Compare to Moroccanoil® and Save" and "If you like Moroccanoil® products, you'll LOVE our new Luxe Majestic Oil line." Reply at 13; Kenny Decl. ¶¶ 11–13, Exs. 1–3. Moroccanoil also submits the expert report of William Decker, an independent consultant in the professional beauty industry, who opines that once the public perceives a brand is no longer "premium," it is "difficult, if not impossible, to reinstate the

premium position." Expert Report of William Decker ("Decker Report") in support of Pls.' Mot. ¶¶ 1, 12 [Doc. 17–1 at p. 36]. Mr. Decker provides examples of beauty brands such as Miss Clairol and Sebastian Shaper whose "premium" products declined in sales once such products entered the mass market consumer retail channel. *Id.* ¶¶ 12–13. He concludes that if consumers mistakenly believe that the Majestic Oil products are connected or associated with the Moroccanoil products, Moroccanoil will lose its reputation as a premium brand and consumers will no longer purchase the product. *Id.* ¶ 19. Moroccanoil's evidence indicates that at least some surveyed consumers believed that Majestic Oil products were manufactured by or associated with Moroccanoil. Kamins Report ¶ 2. As a result, the Court finds there is a risk of irreparable injury to Moroccanoil's customer good will and reputation.

Accordingly, Moroccanoil will likely suffer irreparable reputational injury without the issuance of an injunction enjoining Zotos from distributing its Majestic Oil products in their current packaging.

### C. Balance of Equities

 Before issuing a preliminary injunction, courts must weigh "the competing claims of injury and [ ] consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). Here, the Court is aware of the impact an injunction will have on a segment of Zotos' business. As discussed above, however, Zotos' Majestic Oil line of products has been on the market for a relatively short time, whereas Moroccanoil will likely suffer irreparable reputational

injury for which it cannot be adequately compensated with money damages. Accordingly, the balance of hardships tips sharply in favor of Moroccanoil.

### D. Public Interest

 "The public interest analysis for the issuance of a preliminary injunction requires [district courts] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Alliance for the Wild Rockies*, 632 F.3d at 1138 (citation omitted). "Trademarks protect the public from confusion by accurately indicating the source of a product." *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 715 (9th Cir. 2005). In this case, because the Court has "serious questions" as to whether consumers will likely be confused between the products, the public interest factor weighs in favor of issuing an injunction.

### E. Bond [3]

 Under Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has recognized that Rule 65 "invests the court with discretion as to the amount of security required, *if any*." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (emphasis in original) (quoting *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)). Thus, the purpose of the bond is to safeguard a defendant if the

---

**3.** In connection with the parties' supplemental briefing on the issue of the bond amount, Moroccanoil has filed objections to the Declarations of Elizabeth Kenny and Ronald M. Krassin. [Doc. ## 65, 85.] The Court OVERRULES the evidentiary objections to the declarations upon which the Court relied.

Court later determines that a defendant has been wrongfully enjoined.

Zotos contends it will suffer "very significant financial and reputational harm" if it is required to recall all existing Majestic Oil products and redesign and repackage its product line. Def's First Suppl. at 2 [Doc. # 56.] It claims it will need to recall a substantial number of cases of products from more than 3,000 retail stores and warehouses nationwide. *Id.*; *see also* Suppl. Declaration of Elizabeth Kenny in support of Def.'s Mot. ("Suppl. Kenny Decl.") ¶¶ 4–5 [Doc. # 56–1.] Thus, Zotos requests a bond in the amount of $2.5 million, consisting of costs associated with recalling the products, redesigning the packing, destroying unsellable units, storing the remaining units, and other costs if Zotos is unable to sell warehoused inventory. Def's First Suppl. at 4–5; Suppl. Kenny Decl. ¶¶ 6–16. Zotos also requests lost profits over the next six months. Def's Second Suppl. at 3 [Doc. # 70.]; Second Suppl. Declaration of Elizabeth Kenny in support of Def.'s Mot. ¶ 6 [Doc. # 70–1.] In response, Moroccanoil argues that Zotos fails to base its requested amount on "actual harm demonstrated by admissible evidence" and that "no bond or at most a bond in the amount of $25,000 is appropriate." Pls.' First Suppl. at 1 [Doc. # 64.]

Based on the record before it, the Court finds that a bond in the amount of **$250,000** is reasonable, which takes into account tangible costs Zotos would incur as a result of the preliminary injunction, including costs to (a) ship its product currently in Sally Beauty's brick-and-motor stores and distribution centers, and (b) store current Majestic Oil products that could potentially be re-sold. Although Zotos claims that it is not "commercially viable" to resell Majestic Oil products currently on the shelves at Sally Beauty, it does not appear that all of the product must be destroyed. Suppl. Kenny Decl. ¶ 10. Moroccanoil's ex-

pert, Mr. Decker, opines that "it is common for beauty product manufactures to resell products that have been returned to the manufacturer by a retailer and reworked for resale." Supplemental Report of William Decker in support of Pls.' Mot. ¶ 6 [Doc. # 64 at p. 8]. Thus, the Court declines to order "buy back" costs since it appears Zotos may recoup such amounts if it resumes selling its product with a non-infringing trade dress. *Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F.Supp.2d 1165, 1183 (C.D. Cal. 2010) (finding defendant can also repackage its bottled water and can resume selling water in the United States using a non-infringing trade dress). The Court also declines to order lost profits because such damages are speculative. *Interlink Int'l Fin. Servs., Inc. v. Block*, 145 F.Supp.2d 312, 315 (S.D.N.Y. 2001) (finding a district court need not order security with respect to potential economic damages that are "speculative at best.").

## V.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Moroccanoil's motion for preliminary injunction.

**IT IS SO ORDERED.**