Gloria M. Navarro, Chief Judge
Pending before the Court is the Motion for Preliminary Injunction, (ECF No. 5), as well as the Supplemental Memorandum in Support, (ECF No. 13), filed by Plaintiff Las Vegas Sands Corp. ("Plaintiff"). Defendants have failed to respond to Plaintiff's Motion and the deadline to do so has passed. For the reasons discussed below, Plaintiff's motion is GRANTED .
I. BACKGROUND
This case arises from Defendants' alleged unlawful use of Plaintiff's trademarks in their operation of online casinos. Plaintiff is a Fortune 500 company that owns and operates several properties as casinos and maintains websites on which it markets its hotel and casino services and enables customers to book hotel reservations. (See Mot. for Preliminary Injunction ("Mot. for PI") 3:5-19, ECF No. 5). Plaintiff owns a series of trademark applications and registrations for its Sands and Venetian trademarks. (Id. 3:20-4:8). One of the Sands marks, over which Plaintiff asserts exclusive, common law trademark rights, depicts two Chinese language characters known as a "Jinsha" in connection with its casino and entertainment services. (Id. 4:9-4:2).
According to Plaintiff, Defendants have "set up a network of Internet websites that are accessible to U.S. citizens and are designed to drive Internet users to one or more online casinos unlawfully using" Plaintiff's marks. (Id. 4:22-24). Defendants have further allegedly registered domains (the "Infringing Domains") for unlawful use of Plaintiff's Sands mark "to falsely affiliate the casinos with [Plaintiff] and confuse customers into believing that the websites are" operated or endorsed by Plaintiff. (Id. 4:25-5:2).
II. LEGAL STANDARD
Federal Rule of Civil Procedure 65 governs preliminary injunctions. A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc. , 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). "Injunctive *1076 relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 22, 129 S.Ct. 365. The Ninth Circuit has held that " 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Alliance for the Wild Rockies v. Cottrell , 632 F.3d 1127, 1132 (9th Cir. 2011).
III. DISCUSSION
Plaintiff seeks a preliminary injunction requiring registries for the Infringing Domains to place the associated domains on hold and lock pending a further order from the Court. (See Mot. for PI 16:4-12). As to Defendants, their failure to file any opposition constitutes consent to the granting of Plaintiff's Motion under this District's local rules.[1] See LR 7-2(d); See also Viaview, Inc. v. Blue Mist Media , No. 2:12-cv-1657-GMN-GWF, 2013 WL 12130246, at *1 (D. Nev. Jan. 2, 2013) ; United States v. Walker , 601 F.2d 471, 474 (9th Cir. 1979). As discussed below, the merits of Plaintiff's Motion additionally support the issuance of preliminary injunctive relief.
A. Likelihood of Success on the Merits
To prevail on a trademark infringement claim, a plaintiff must show it is: "(1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc. , 736 F.3d 1239, 1247 (9th Cir. 2013). As to a valid, protectable mark, Plaintiff has put forth a Declaration from Calvin Siemer, Plaintiff's Vice President & Deputy General Counsel, who confirms the validity of Plaintiff's trademark registrations and attaches copies of the same to his Declaration. (See Plaintiff's Trademark Registrations, Ex. A to Siemer Decl., Ex. 1 to Mot. for PI, ECF No. 5-2). Plaintiff holds marks including those identified under Registration Nos. 1,209,102; 3,734,615; 3,838,397; 3,850,500; 2,507,363; 2,507,362; 2,352,445; and 2,655,917. (See id. ). See also Quiksilver, Inc. v. Kymsta Corp. , 466 F.3d 749, 755 (9th Cir. 2006) ("Federal registration of a trademark constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use that mark in commerce.").
With respect to the likelihood of consumer confusion, courts consider: "(1) strength of the allegedly infringed mark; (2) proximity or relatedness of the goods; (3) similarity of the sight, sound, and meaning of the marks; (4) evidence of actual confusion; (5) degree to which the marketing channels converge; (6) type of the goods and degree of care consumers are likely to exercise in purchasing them; (7) intent of the defendant in selecting the allegedly infringing mark; and (8) likelihood that the parties will expand their product lines." E. & J. Gallo Winery v. Gallo Cattle Co. , 967 F.2d 1280, 1290 (9th Cir. 1992).
i. Strength of the Mark
The stronger a mark, the greater the protection it is accorded by trademark laws. Network Automation, Inc. v. Advanced Sys. Concepts, Inc. , 638 F.3d 1137, 1149 (9th Cir. 2011). Marks may be classified as: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful.
*1077 Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery , 150 F.3d 1042, 1047 (9th Cir. 1998). Suggestive, arbitrary, and fanciful marks are inherently distinctive and strong, and do not require proof of secondary meaning to be protected. Id. "Arbitrary marks have no relevance to any feature or characteristic of a product." Id. at 1047 n.8. "Fanciful marks are the most distinctive marks of all; they involve a high degree of imagination." Id.
Here, the marks in question include the "SANDS" and "JINSHA" marks, which Plaintiff contend are arbitrary because there is no intrinsic connection to its hotel or casino services. (Mot. for PI 7:4-6). Plaintiff also asserts that the "VENETIAN" mark is "at least suggestive." (Id. 7:6). Finally, Plaintiff argues the "long standing and extensive use" of its marks in connection with its commercially successful "world famous hotel casinos" lends support to the marks' strength. (Id. 7:6-9).
The Court agrees with Plaintiff that the "SANDS" and "JINSHA" marks are strong as they do not appear to describe or distinguish Plaintiff's underlying hotel and casino services. See Entrepreneur Media, Inc. v. Smith , 279 F.3d 1135, 1141 (9th Cir. 2002) ("An arbitrary mark is a common word that is non-descriptive of any quality of the goods or services."). With respect to the "VENETIAN" mark, Plaintiff does not advance any reasoning for its conclusion that the mark is suggestive. Nevertheless, this mark is entitled to greater than de minimis protection in light of this mark being utilized by Plaintiff for nearly twenty years and given Plaintiff's world-wide reputation. See, e.g. , Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp. , 174 F.3d 1036, 1058 (9th Cir. 1999) (noting that "marketplace recognition" can "transform a suggestive mark into a strong mark"). Additionally, as discussed below, because the marks are identical in appearance and the services at issue are closely related, if not in competition, "the strength of the mark is of diminished importance in the likelihood of confusion analysis." Id. at 1059.
ii. Proximity of the Goods and Marketing Channels Used
"Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." Id. at 1056. "The more closely related the goods ..., the more likely consumers will be confused by similar marks." Entrepreneur Media , 279 F.3d at 1147. In determining the proximity of goods, courts consider: (1) whether the goods are "complementary"; (2) whether "the products are sold to the same class of purchasers"; and (3) whether "the goods are similar in use and function." AMF Inc. v. Sleekcraft Boats , 599 F.2d 341, 350 (9th Cir. 1979). Here, Defendants offer online gambling services and Plaintiff owns properties that operate casinos and markets its services online. While the services are distinct in terms of online patronage versus in-person gaming, they do target a similar class of customer that gambles for recreation. Indeed, the relevant inquiry does not focus upon the "relatedness of each company's prime directive," but rather "whether the consuming public is likely somehow to associate" Plaintiff's services with that of Defendants'. See Brookfield Commc'ns , 174 F.3d at 1056. Because the parties' services target a similar class of consumers and their respective enterprises centrally concern gaming, this factor weighs in favor of Plaintiff. See Moroccanoil, Inc. v. Zotos Int'l, Inc. , 230 F.Supp.3d 1161, 1176 (C.D. Cal. 2017) ("Notwithstanding that the parties sell their products in different marketing channels, the 'similarities between the products suggest an overlapping general class of consumers.' ") (quoting Pom Wonderful LLC v. Hubbard , 775 F.3d 1118, 1131 (9th Cir. 2014) ).
*1078 iii. Similarity of the Marks
As to the similarity between the allegedly infringing marks and Plaintiff's marks, the general rule is "the greater the similarity between the two marks at issue, the greater the likelihood of confusion." GoTo.com, Inc. v. Walt Disney Co. , 202 F.3d 1199, 1206 (9th Cir. 2000). Plaintiff's attached screenshots show that its unique "SANDS" marks are nearly identical to those on Defendants' websites and are stylized with the same cursive-style "d" extending leftward towards the "S." (See, e.g. , Screenshots of Defendants' Website Homepages at 3, 20, 24, 28, 30, ECF No. 5-4). In many of these images, Plaintiff's "Jinsha" mark also appears just below the styled "SANDS" identifier. (See id. at 16, 20, 24, 28, 30). The screenshots also show that Defendants use the "VENETIAN" mark consisting of a distinct leftward-facing winged lion holding a tablet with a capitalized letter "V" displayed. (Id. at 63-124, ECF No. 4-5). The Court is satisfied that these marks are extensivel similar, if not identical.
iv. Evidence of Actual Confusion
Plaintiff contends it does not have evidence of customer confusion but has "received complaints from customers experiencing actual confusion from other websites of a similar nature and that are likely associated with each other." (Mot. for PI 8:19-22). The Court nonetheless recognizes that a lack of evidence of customer confusion need not weigh for or against a finding of a likelihood of confusion. See La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V. , 762 F.3d 867, 876 (9th Cir. 2014) ("[T]he difficulty of garnering such evidence, the failure to prove instances of actual confusion is not dispositive.... [T]his factor is weighed heavily only when ... the particular circumstances indicate such evidence should have been available.") (citation omitted).
v. Degree of Care Consumer Care
Plaintiff asserts that the degree of consumer care in the context of Internet services is low and that Ninth Circuit authority is in accord with this proposition. (Mot. for PI 5:3-9). While Ninth Circuit courts previously presumed that Internet consumers lack sophistication, see, e.g. , Goto.com, Inc. , 202 F.3d at 1209, this Circuit more recently rejected this approach and clarified that the "default degree of consumer care is becoming more heightened as the novelty of the Internet evaporates and online commerce becomes commonplace." Network Automation, Inc. v. Advanced Sys. Concepts, Inc. , 638 F.3d 1137, 1152 (9th Cir. 2011). This factor weighs neutrally in the balance.
vi. Intent of the Defendants
Although "an intent to confuse consumers is not required for a finding of trademark infringement, intent to deceive is strong evidence of a likelihood of confusion" Entrepreneur Media , 279 F.3d at 1148 (internal citations and quotation marks omitted). If an "alleged infringer knowingly adopts a mark similar to another's [mark]," then the court may presume that "the public will be deceived." Id. Plaintiff argues that Defendants "intended to cause confusion and trade off of the goodwill and reputation [Plaintiff] has created in the Sands' Trademarks" by placing "identical or near identical copies of Sands' Trademarks on the homepages of their online casinos." (Mot. for PI 9:17-20). While Plaintiff does not support this with evidence or offer a theory as to how Defendants' intent may be inferred, this does not necessarily impact the instant balancing. See Electropix v. Liberty Livewire Corp. , 178 F.Supp.2d 1125, 1134 (C.D. Cal. 2001) ("Although intent to confuse consumers can constitute strong evidence of confusion, "[t]he converse ... is not true: the lack of intent by a defendant is largely *1079 irrelevant in determining if consumers likely will be confused as to source.") (quoting Brookfield Commc'ns Inc. , 599 F.2d at 1134).
Even so, because of the obvious similarity between the marks and Defendants' use of them in the promotion of gambling, an inference may be drawn that Defendants intended to deceive the public as to the source of their services. See, e.g. , CytoSport, Inc. v. Vital Pharm., Inc. , 617 F.Supp.2d 1051, 1072 (E.D. Cal. 2009) ("[I]ntent to derive benefit from [Plaintiff's] brand may be found in the obvious similarity between the product packaging and labeling."); K-Swiss, Inc. v. USA AISIQI Shoes Inc. , 291 F.Supp.2d 1116, 1125 (C.D. Cal. 2003) (drawing inference of intent to deceive based on factors including senior marks' strong reputation and the similarity in appearance of the products); see also All. for Good Gov't v. Coal. for Better Gov't , 901 F.3d 498, 512 (5th Cir. 2018) ("The district court correctly inferred from the striking similarity between the marks that Coalition's later mark was adopted "with the intent of deriving benefit from [Alliance]."). In light of the marks' glaring similarities and Defendants' use of those marks as webpage backdrops for their marketing of online gambling, this factor weighs in favor of a finding of consumer confusion.
vii. Likelihood of the Parties Expanding Their Product Lines
The final factor weighs neutrally on the balance as Plaintiff and Defendants utilize their respective Internet websites to promote and market avenues and opportunities for gaming. See Playboy Enters., Inc. v. Netscape Commc'ns Corp. , 354 F.3d 1020, 1029 (9th Cir. 2004) ("Because the advertisers' goods and PEI's are already related ... this factor is irrelevant."); See also Moroccanoil, Inc. , 230 F.Supp.3d at 1177 ; GoTo.com , 202 F.3d at 1209.
In summary, Plaintiff has sufficiently demonstrated a likelihood of success on the merits of its trademark infringement claim. Of the relevant factors, half of them-the strength of the marks, proximity of the services, similarity of the marks, and Defendants' intent-weigh decisively in Plaintiff's favor, and the balance of the factors are either neutral or inapplicable. The Court now turns to the remaining Winter factors.
B. Irreparable Harm
A plaintiff must "demonstrate a likelihood of irreparable injury-not just a possibility-in order to obtain preliminary relief." Winter , 555 U.S. at 21, 129 S.Ct. 365. "Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm." Herb Reed Enters., LLC , 736 F.3d at 1251. While "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award," Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc. , 944 F.2d 597, 603 (9th Cir. 1991), evidence of loss of prospective customers or goodwill is sufficient. Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc. , 240 F.3d 832, 841 (9th Cir. 2001).
Plaintiff argues that irreparable harm is evidenced in the following ways. First, Plaintiff states the infringement impacts Plaintiff's goodwill and reputation because Plaintiff opposes legalized Internet gambling and has received complaints from customers who have used similar websites only to be "duped into paying money or gambling on these websites." (Mot. for PI 10:16-25). Second, Plaintiff asserts that because Defendants have no domestic presence, it may be impossible to recover monetary damages. (Id. 11:17-12:2). Third, Plaintiff contends that the potential for Defendants transferring the domains to *1080 another registrant during the pendency of this case constitutes a credible risk of irreparable harm. (Id. 12:3-19).
In the Court's order on Plaintiff's Motion for Temporary Restraining Order, the Court recognized these are sufficient grounds to support a finding of irreparable harm. (See Order 9:19-10:8, ECF No. 7). At the hearing on Plaintiff's Motion for Preliminary Injunction, the Court noted that one of Plaintiff's arguments to establish irreparable harm-consumer confusion and the corresponding damage to reputation-apparently conflated the likelihood-of-success inquiry with the irreparable-harm question. (Mins. of Proceedings, ECF No. 11). The Court requested a supplemental brief discussing the standard in light of the Ninth Circuit's pronouncement in Herb Reed , where the Court affirmed that a showing of a likelihood of success on the merits, standing alone, is insufficient to establish irreparable harm. See Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc. , 736 F.3d 1239, 1250-51 (9th Cir. 2013) ; ("Gone are the days when '[o]nce the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue.' ") (citation omitted).
In its brief, Plaintiff emphasizes that it only seeks to "lock the domain names at issue to prevent their transfer to registrars outside" the Court's jurisdiction rather than an order preventing "Defendants from using [Plaintiff's] marks on the websites at issue." (Pl.'s Suppl. Br. 1:22-25, ECF No. 13). Plaintiff contends that the relevant inquiry is whether irreparable harm will arise "if the Court does not order the registrar to maintain the lock on the domain names." (Id. 1:26-28). Therefore, according to Plaintiff, irreparable harm may be shown based upon Plaintiff's inability to "recover a monetary judgment against a foreign defendant with no presence in the United States." (Id. 3:14-15). The Court agrees.
In cases that postdate Herb Reed , Courts in this District have concluded irreparable harm may be demonstrated, in part, where a defendant "has no presence in the United States," making it "difficult or impossible ... to recover a money judgment." Omix-ADA, Inc. v. Qingdao Hairunkaiyuan Auto Parts Co., Ltd. , No. 2:17-cv-02748-MMD-PAL, 2017 WL 9400748, at *1 (D. Nev. Nov. 22, 2017) ; Nike, Inc. v. Fujian Bestwinn (China) Indus. Co. , 166 F.Supp.3d 1177, 1179 (D. Nev. 2016) ("Further, because [the defendant] has no presence in the United States, it may be difficult or impossible for NIKE to recover a money judgment ...."); Toyo Tire & Rubber Co. v. Kabusikiki Kaisha Tokyo Nihoon Rubber Corp. , No. 2:14-cv-01847-JAD-VCF, 2015 WL 6501228, at *4 (D. Nev. Oct. 26, 2015) (same). Similarly, a defendant's failure to appear or otherwise participate in litigation suggests a likelihood of continued infringement which supports a finding of irreparable harm. See id. ("[Plaintiff] has shown that it has suffered-and will continue to suffer-irreperable harm absent the requested injunction. This is especially true in light of [the defendants'] failure to appear in-or even acknowledge-this case."); See also Jackson v. Sturkie , 255 F.Supp.2d 1096, 1103 (N.D. Cal. 2003) ("Defendant's lack of participation in this litigation has given the court no assurance that Defendant's infringing activity will cease"); Sanrio, Inc. v. Torres , No. CV-1403736-MMM-JCX, 2015 WL 12661916, at *10 (C.D. Cal. Jan. 5, 2015) (same).
Irreparable harm is also implicated where there is a potential for an infringing defendant to transfer domain names to a different registrar outside of a court's jurisdiction. See, e.g. , *1081 Las Vegas Sands Corp. v. First Cagayan Leisure & Resort Corp. , No. 2:14-cv-00424-JCM-NJK, 2014 WL 12647764, at *1 (D. Nev. Dec. 19, 2014). Additionally, where, as here, the evidence suggests that a defendant is using the plaintiff's actual trademark-as opposed to a similar mark-the plaintiff's loss of control over its business reputation supports a finding of irreparable harm. See 2Die4Kourt v. Hillair Capital Mgmt., LLC , 692 F. App'x 366, 369 (9th Cir. 2017) ; See also Toyo Tire , 2015 WL 6501228, at *4 (holding that "a loss of control over a plaintiff's mark, reputation, and goodwill" may support "an inference of irreparable harm" where a plaintiff has "spent considerable time and effort building its reputation" and the infringing defendant "has merely piggy-backed off of [the plaintiff's] success.").
The Court is satisfied that Plaintiff has made a sufficient showing of irreparable harm based upon these benchmarks. Defendants in this matter are believed to be Chinese residents whose identities are unknown because they registered the Infringing Domains through a privacy service. (See McCue Decl. ¶¶ 4-6, Ex. 3 to Mot. for PI, ECF No. 5-3). The potential for Plaintiff's inability to recover based upon this fact, the risk that Defendants may transfer the domains to registrars outside this Court's jurisdiction, and Defendants' unwillingness to participate in this case all counsel in favor of a finding of irreparable harm. Additionally, as noted above, the Court agrees that loss of goodwill and control over Plaintiff's reputation can reasonably be inferred because of the distinct similarities between the marks and their use in a manner contrary to Plaintiff's public stance against online gaming. (See Siemer Decl. ¶ 9, Ex. 1 to Mot. for PI, ECF No. 5-1).
C. Balance of the Equities
"Before issuing a preliminary injunction, courts must weigh 'the competing claims of injury and [ ] consider the effect on each party of the granting or withholding of the requested relief.' " Moroccanoil, Inc. , 230 F.Supp.3d at 1178 (quoting Amoco Prod. Co. v. Village of Gambell, AK , 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) ).
Plaintiff argues that its requested relief appropriately balances the equities because it is limited to prohibiting "Defendants from transferring the domain names for the Infringing Domains to a registrar or registrant located outside of the Court's jurisdiction during the pendency of this case." (Mot. for PI 13:1-4). The Court agrees that the scope of the relief Plaintiff seeks respects an equitable balance by temporarily locking Defendants' domain names. Additionally, as discussed above, Plaintiff would suffer irreparable harm in the absence of an injunction due its loss of control over its goodwill and reputation and the credible risk that monetary damages may be unavailable absent an injunction. Finally, because the Court is satisfied that the similarity of the marks gives rise to an inference of intent, the Court concludes that the equities weigh in favor of injunctive relief.
D. Public Interest
It is well established that trademark law "protect[s] the public from confusion by accurately indicating the source of a product." State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc. , 425 F.3d 708, 715 (9th Cir. 2005). "Preventing consumer confusion serves the public interest and there is a strong policy in favor of protecting rights to trademarks." Stark v. Diageo Chateau & Estate Wines Co. , 907 F.Supp.2d 1042, 1067 (N.D. Cal. 2012). It follows that an injunction premised upon "serious questions" going to the merits of trademark infringement action serves the public interest. See, e.g. , Moroccanoil, Inc. , 230 F.Supp.3d at 1178.
*1082 Here, given the strong public policy in favor of mitigating customer confusion coupled with Plaintiff's strong showing of a likelihood of success on the merits, the Court finds that the public interest supports issuance of a preliminary injunction.
IV. CONCLUSION
IT IS HEREBY ORDERED that Plaintiff's Motion for Preliminary Injunction, (ECF No. 5), is GRANTED .
A. The bond that the Plaintiff posted in the amount of $ 100 as security shall remain in place pending further order of the Court.
B. The domain name registrar and registries, including but not limited to GoDaddy and VeriSign, Inc., shall maintain the Infringing Domains, as identified in Exhibit A to this Order, on hold and lock pending a further order of the Court.
EXHIBIT A
DOMAINS TO BE LOCKED PENDING RESOLUTION OF ACTION
*1083 Domain Registrant Name Registrant Email 508091.com Fan Yu Ming amjsbet@163.com 120454.com Hu Weisheng 20702176@qq.com 454511.com Hu Weisheng 80010864@QQ.COM 554182.com Jie Guo vnsr6055@gmail.com vn98805.com Liio Nan Feioo 95023796@qq.com 11989d.com Linl Linlin jiangyiming588@gmail.com 11989t.com Lint Linlin jiangyiming588@gmail.com 11989w.com Linl Linlin jiangyiming588@gmail.com v881888.com Mulong Wong Wanmeikuayue@gmail.com 368js.com Naa Feii 87776119@qq.com js8808.com Nanfei Li 87776119@qq.com vn1111.com Nanfei Li 87776119@qq.com vn505.com Nanfei Li 87776119@qq.com www-44221.com Ruixing Jiang jrx239063888@gmail.com 6218m.com Xen Wang 1548432325@qq.com 6218r.com Xen Wang 1548432325@qq.com 6218t.com Xen Wang 1548432325@qq.com 6218w.com Xen Wang 1548432325@qq.com 621802.com Yan Huang vsv88888@qq.com v116.net Yuebin Chen changcheng@188.com v11622.com Yuebin Chen changcheng@188.com 58668bb.com Zhu Yuxia zhuyuxia88989@gmail.com 58668ee.com Zhu Yuxia zhuyuxia88989@gmail.com 1101444234.com Registration Private 1101444234.com@domainsbyproxy.com 117487.com Registration Private 117487.com@domainsbyproxy.com 124122949.com Registration Private 124122949.com@domainsbyproxy.com 13233833330.com Registration Private 13233833330.com@domainsbyproxy.com 17828c.com Registration Private 17828c.com@domainsbyproxy.com 17828n.com Registration Private 17828n.com@domainsbyproxy.com 17828p.com Registration Private 17828p.com@domainsbyproxy.com 17828s.com Registration Private 17828s.com@domainsbyproxy.com 17828w.com Registration Private 17828w.com@domainsbyproxy.com 17858i.com Registration Private 17858i.com@domainsbyproxy.com 17858m.com Registration Private 17858m.com@domainsbyproxy.com 17858s.com Registration Private 17858s.com@domainsbyproxy.com 17858t.com Registration Private 17858t.com@domainsbyproxy.com 17858x.com Registration Private 17858x.com@domainsbyproxy.com 17869g.com Registration Private 17869g.com@domainsbyproxy.com 17869n.com Registration Private 17869n.com@domainsbyproxy.com 17869r.com Registration Private 17869r.com@domainsbyproxy.com 777789.net Registration Private 777789.net@domainsbyproxy.com *1084 962466.com Registration Private 962466.com@domainsbyproxy.com baliren.com Registration Private baliren.com@domainsbyproxy.com blr666.com Registration Private BLR666.COM@domainsbyproxy.com chenwen138.com Registration Private chenwen138.com@domainsbyproxy.com hk999hk.com Registration Private hk999hk.com@domainsbyproxy.com js9900.com Registration Private js9900.com@domainsbyproxy.com v5888.com Registration Private v5888.com@domainsbyproxy.com v6181.com Registration Private v6181.com@domainsbyproxy.com v6184.com Registration Private v6184.com@domainsbyproxy.com v66366.com Registration Private v66366.com@domainsbyproxy.com v66566.com Registration Private v66566.com@domainsbyproxy.com v7181.com Registration Private v7181.com@domainsbyproxy.com v7982.com Registration Private v7982.com@domainsbyproxy.com v7987.com Registration Private v7987.com@domainsbyproxy.com v88998.com Registration Private v88998.com@domainsbyproxy.com v8999.com Registration Private v8999.com@domainsbyproxy.com vnsr1005.com Registration Private vnsr1005.com@domainsbyproxy.com vnsr1006.com Registration Private vnsr1006.com@domainsbyproxy.com vnsr1007.com Registration Private vnsr1007.com@domainsbyproxy.com vnsr1008.com Registration Private vnsr1008.com@domainsbyproxy.com vnsr1009.com Registration Private vnsr1009.com@domainsbyproxy.com vnsr11011.com Registration Private vnsr11011.com@domainsbyproxy.com vnsr22022.com Registration Private vnsr22022.com@domainsbyproxy.com vnsr33033.com Registration Private vnsr33033.com@damainsbyproxy.com vnsr44044.com Registration Private vnsr44044.com@domainsbyproxy.com vnsr55055.com Registration Private vnsr55055.com@domainsbyproxy.com vnsr66066.com Registration Private vnsr66066.com@domainsbyproxy.com vnsr77077.com Registration Private vnsr77077.com@domainsbyproxy.com vnsr88088.com Registration Private vnsr88088.com@domainsbyproxy.com vnsr99099.com Registration Private vnsr99099@domainsbyproxy.com XJS000.com Registration Private XJS000.COM@domainsbyproxy.com yyyy5555.com Registration Private YYYY5555.COM@domainsbyproxy.com

Plaintiff effected service upon Defendants on December 12, 2018, (ECF No. 10). Defendants did not appear at the Court's hearing on the instant Motion, (ECF No. 11), and have neglected to appear in this action.